**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| 2301 M CINEMA LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-1990 (EGS) |
| | ) | |
| SILVER CINEMAS ACQUISITON CO., | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

## I. Introduction

To show a film, a movie theater must obtain a license from
the film's distributor. The case before the Court involves the
competitive market between theaters for exclusive licenses to
show specialty films. Plaintiffs—2301 M Cinema d/b/a West End
Cinema ("West End Cinema"), the Avalon Theatre Project, Inc.
("the Avalon"), the Denver Film Society, and the Cinema Detroit
(collectively, "plaintiffs")—bring this action against Silver
Cinemas Acquisition Co. d/b/a Landmark Theatres and its parent
corporation 2929 Entertainment, LP (collectively, "Landmark").
Plaintiffs allege that Landmark violated federal antitrust law
by using its national market power to coerce film distributors
into granting Landmark exclusive licenses, preventing plaintiffs
and other independent theaters from showing specialty films.
Plaintiffs' four-count complaint charges Landmark with: (1)

circuit dealing in violation of Section 1 of the Sherman Act;
(2) using its monopoly power in violation of Section 2 of the
Sherman Act; (3) attempting to use its monopoly power in
violation of Section 2 of the Sherman Act; and (4) interfering
with plaintiffs' business relations.

Pending before the Court is Landmark's motion to dismiss
plaintiffs' complaint. *See* Defs.' Mot., ECF No. 16. After
careful consideration of the motion, the response, the reply
thereto, and the applicable law, Landmark's motion to dismiss is
**GRANTED IN PART** and **DENIED IN PART**.

## II. Background

Plaintiffs are four independent, community theaters that
primarily show specialty films. Compl., ECF No. 1 ¶¶ 14-17.
Specialty films include "independent films, art films, foreign
films, and documentaries." *Id.* ¶ 24. Unlike mainstream
commercial films, specialty films are not intended to appeal to
a broad audience and are therefore released less widely than
commercial films. *Id.* The first plaintiff, West End Cinema,
operated in the District of Columbia from 2010 until 2015. *Id.* ¶
14. In 2015, West End Cinema was "forced" out of business,
allegedly by Landmark's anticompetitive licensing practices. *Id.*
Landmark leased the West End Cinema's space and has since opened
a Landmark theater in its place. *Id.* The Avalon is another
independent theater located in the District of Columbia. *Id.* ¶

15. The Denver Film Society is a nonprofit organization located in Denver, Colorado that provides specialty film programming via "year-round screening, film festivals, and other special events." *Id.* ¶ 16. It operates the Sie FilmCenter, a specialty film theater. *Id.* Finally, Cinema Detroit is a non-profit specialty film theater located in Detroit, Michigan. *Id.* ¶ 17.

Defendant Landmark is a Delaware corporation and subsidiary of 2929 Entertainment, LP. *Id.* ¶ 18. It operates fifty-one specialty film theaters in twenty-two geographic markets nationwide. *Id.* It is "the largest specialty film movie theater chain in the country" and is purportedly opening new theaters on a regular basis. *Id.*

Both plaintiffs and Landmark are "exhibitors," the industry term for movie theaters. *Id.* ¶ 21. Exhibitors must negotiate with film distributors for licenses to exhibit films at their theaters. *See id.* ¶ 22. Distributors are the entities responsible for marketing the film; they act as a "middleman" between the production studio and the exhibitor. *Id.* ¶ 5. Generally, a distributor's income for each film is tied to the revenue earned by the exhibitor during its run of the film. *See id.* ¶¶ 75-76. License agreements between distributors and exhibitors specify the terms under which the exhibitor may show a particular film. *See id.* ¶¶ 21-22, 25. In some instances, license agreements may include "clearances," or an exclusive

right to show a film. *Id.* ¶ 25. In acquiescing to a clearance, a distributor agrees not to license a film to any other exhibitor, or to specific exhibitors, in the same geographic market. *Id.* Clearances are generally negotiated either for the first few weeks a film is shown, a "first-run" clearance, or for the entire period a film is screened by an exhibitor, a "day and date" clearance. *See id.* ¶¶ 21, 25, 28. Clearances must be negotiated on a theater-by-theater, film-by-film basis. Therefore, exhibitors may not engage in circuit-dealing, whereby "a dominant movie theater chain," known as a "circuit," "uses its market power to obtain preferential agreements, particularly clearances, from distributors for the licensing of films . . . in multiple geographic markets." *Id.* ¶ 28 (citing *United States v. Paramount Pictures*, 334 U.S. 131, 154-55 (1948)).

Plaintiffs allege that Landmark, as the "dominant theater 'circuit' for the exhibition of specialty films in the United States," leverages its market position to obtain clearance agreements nationwide. *Id.* ¶¶ 29, 30. Rather than negotiating clearances on an individual theater-by-theater, film-by-film basis, plaintiffs assert that Landmark obtains "blanket clearances" for more than one film or theater from distributors that accede to Landmark's demands for fear of retribution and loss of Landmark's business. *Id.* ¶ 29. Plaintiffs seek an

injunction, treble damages, costs and fees, and actual damages. *See id.* ¶¶ 89-90, 97-98, 102-04, 112-13.

## III. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations and citations omitted).

Despite this liberal pleading standard, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face*." Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted). A claim is facially plausible when the facts pled in the complaint allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The standard does not amount to a "probability requirement," but it does require more than a "sheer possibility that a defendant has acted unlawfully." *Id.*

"[W]hen ruling on a defendant's motion to dismiss [pursuant to Rule 12(b)(6)], a judge must accept as true all of the factual allegations contained in the complaint." *Atherton v.*

*D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009)

(quotations and citations omitted). In addition, the court must

give the plaintiff the "benefit of all inferences that can be

derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16

F.3d 1271, 1276 (D.C. Cir. 1994). Even so, "[t]hreadbare

recitals of the elements of a cause of action, supported by mere

conclusory statements" are not sufficient to state a claim.

*Iqbal*, 556 U.S. at 678.

"To survive a 12(b)(6) motion to dismiss a claim in an

antitrust case, plaintiffs must do more than simply paraphrase

the language of the antitrust laws or state in conclusory terms

that the non-movant has violated those laws." *WAKA LLC v. DC

Kickball*, 517 F. Supp. 2d 245, 249 (D.D.C. 2007) (citing *Dial A

Car, Inc. v. Transp., Inc.*, 884 F. Supp. 584, 588 (D.D.C. 1995),

*aff'd* 82 F.3d 484 (D.C. Cir. 1996)). "[I]f [the plaintiff]

claims an antitrust violation, but the facts he narrates do not

at least outline or adumbrate such a violation, he will get

nowhere merely by dressing them up in the language of

antitrust." *Dial A Car*, 884 F. Supp. at 588 (quoting *Sutliff,

Inc. v. Donovan Companies, Inc.*, 727 F.2d 648 (7th Cir. 1984))

(internal quotation marks omitted). That said, because "the

proof is largely in the hands of the alleged conspirators,"

dismissal procedures "should be used sparingly in complex

antitrust litigation" until the plaintiff is given ample

opportunity for discovery. *Poller v. Columbia Broad. Sys.*, 368
U.S. 464, 473 (1962).

## IV. Analysis

Landmark moves to dismiss the plaintiffs' complaint for
failure to state a claim pursuant to Federal Rule of Civil
Procedure 12(b)(6), putting forth several arguments. *See* Defs.'
Mot., ECF No. 16. First, it contends that 2929 Entertainment
should be dismissed, because the complaint does not allege that
the parent corporation was responsible for the actions of its
subsidiary. *Id.* at 29.[1] Second, Landmark argues that plaintiffs
fail to state a plausible circuit dealing claim (Count I)
because plaintiffs fail to allege: (1) that Landmark wielded its
circuit power to coerce distributors; (2) concerted action or
agreement; and (3) an antitrust injury. *Id.* at 13-25. Third,
Landmark argues that plaintiffs fail to state a plausible
monopolization or attempted monopolization claim (Counts II and
III) because plaintiffs fail to allege: (1) that Landmark
exercised leveraging conduct; and (2) that Landmark has monopoly
power. *Id.* at 25-28. Finally, Landmark contends that plaintiffs
fail to state a plausible tortious interference claim (Count
IV). *Id.* at 28-29. The Court analyzes each argument in turn.

---

[1] When citing electronic filings throughout this opinion, the
Court cites to the ECF page number, not the page number of the
filed document.

## A. Defendant 2929 Entertainment, LP is Dismissed Without Prejudice

Landmark argues that its parent corporation 2929 Entertainment should be dismissed because the complaint does not allege that it was responsible for the actions of its subsidiaries. Defs.' Mot., ECF No. 16 at 29. Plaintiffs agree and reserve the right to seek leave to amend the complaint and add 2929 Entertainment as a defendant as discovery unfolds. Pls.' Opp'n, ECF No. 17 at 37. Therefore, the Court **GRANTS** Landmark's motion and dismisses without prejudice defendant 2929 Entertainment, LP from this action.

## B. Plaintiffs Sufficiently Allege a Circuit Dealing Claim

Landmark argues that Count I must be dismissed because plaintiffs fail to state a plausible circuit dealing claim in violation of Section 1 of the Sherman Act. Defs.' Mot., ECF No. 16 at 13-25. First, Landmark argues that plaintiffs fail to allege that Landmark wielded its national circuit power to coerce distributors to agree to clearance agreements. *Id.* at 13-19. Landmark also argues that plaintiffs do not allege that it negotiated any unlawful blanket clearances covering more than one theater or film. *Id.* Instead, it contends that plaintiffs merely allege a series of theater-by-theater, city-by-city negotiated clearance agreements for individual films, a lawful industry practice. *Id.* at 14-18. Plaintiffs respond that they

allege "six specific instances of Landmark's circuit dealing at work." Pls.' Opp'n, ECF No. 17 at 10. Moreover, plaintiffs argue that they allege that Landmark coerces and penalizes distributors, forcing them to enter into unlawful clearance agreements to avoid retribution. *Id.* at 19-21.

Alternatively, Landmark argues that plaintiffs fail to allege concerted action or agreement between Landmark and the distributors. Defs.' Mot., ECF No. 16 at 19-22. Instead, Landmark contends that plaintiffs' allegations merely "indicate unilateral decision-making." *Id.* at 21. Plaintiffs argue that the complaint alleges that distributors agree to provide blanket clearances for fear of retribution, even though such clearances are against the distributors' own economic interests. *See* Pls.' Opp'n, ECF No. 17 at 24-27.

Finally, Landmark argues that plaintiffs fail to allege an injury to competition and consumers. Defs.' Mot., ECF No. 16 at 22-25. Landmark contends that plaintiffs merely assert individual harm, an insufficient antitrust injury. *See id.* Plaintiffs respond that the complaint alleges injury to competition by way of decreased output and revenue for distributors and increased prices, fewer choices, and decreased quality for consumers. Pls.' Opp'n, ECF No. 17 at 29.

## 1. Coercive Use of National Power

Circuit dealing constitutes a *per se* violation of the Sherman Act, as "[t]he inclusion of theatres of a circuit into a single agreement gives no opportunity for other theatre owners to bid for the feature in their respective areas and . . . is therefore an unreasonable restraint of trade." *United States v. Paramount Pictures*, 334 U.S. 131, 154 (1948); *see Cobb Theatres III, LLC v. AMC Entm't Holdings, Inc.*, 101 F. Supp. 3d 1319, 1342 (N.D. Ga. 2015)(citing *Paramount*, 334 U.S. at 153–55; *United States v. Griffith*, 334 U.S. 100, 106–09 (1948), *disapproved on other grounds by Copperweld Corp. v. Indep. Tube Corp*, 467 U.S. 752 (1984)). Circuit dealing occurs when an exhibitor "pools the purchasing power of an entire circuit to 'eliminate the possibility of bidding for films [on a] theatre by theatre [basis].'" *Cobb Theatres*, 101 F. Supp. 3d at 1342 (quoting *Paramount*, 334 U.S. at 154). An exhibitor may pool its purchasing power by negotiating "agreements that cover exhibition in *two or more theatres* in a particular circuit . . . ." *Paramount*, 334 U.S. at 154 (emphasis added). Such anticompetitive conduct "eliminate[s] the opportunity for a small competitor to obtain the choice of first runs," and "put[s] a premium on the size of the circuit." *Id.*

An exhibitor may also engage in circuit dealing by "unlawful monopoly leveraging," *Cobb Theatres*, 101 F. Supp. 3d

at 1342, which occurs when an exhibitor "with a monopoly of theatres in any one town . . . . uses that strategic position to acquire exclusive privileges in a city where [the exhibitor] has competitors," *Griffith*, 334 U.S. at 107; *see United States v. Crescent Amusement Co.*, 323 U.S. 173, 181 (1944) (finding circuit dealing when "the . . . defendants insist that a distributor give them monopoly rights in towns where they had competition or else defendants would not give the distributor any business in the closed towns where they had no competition"). Monopolistic advantage may be reflected in the agreements obtained or the favorable terms therein. *See Schine Chain Theatres v. United States*, 334 U.S. 110, 115-16 (1948), *overruled on other grounds by Copperweld Corp.*, 467 U.S. 752.

Plaintiffs sufficiently allege that Landmark leverages its monopoly power by coercing film distributors to accept clearances agreements that favor Landmark and to deny plaintiffs' requests to show specialty films. *See, e.g.*, Compl., ECF No. 1 ¶¶ 4, 63. Rather than negotiating clearances on an individual theater-by-theater, film-by-film basis, as Landmark must, plaintiffs assert that Landmark wields its circuit power to obtain exclusive clearances against independent theaters. *See id.* ¶¶ 29, 64. First, plaintiffs allege that Landmark, as the largest specialty film exhibitor in the nation, exerts considerable influence over distributors. *See id.* ¶ 18. Landmark

has fifty-one theaters in twenty-two major geographic markets nationwide. *Id.* ¶ 71. Specifically, plaintiffs allege several major markets in which Landmark occupies the majority of the specialty film exhibitor market, including St. Louis (80%), Houston (60%), Philadelphia (54%), Detroit (60%), Denver (73%), and the District of Columbia (68%). *Id.* ¶¶ 44-62. Taking such allegations in the light most favorable to plaintiffs, the Court must infer that distributors may be inclined to accede to Landmark's demands.

Next, plaintiffs allege that Landmark uses its considerable market power to deny smaller competitors, like plaintiffs, access to the market. *See id.* ¶ 71 ("Landmark's message to the distributors is clear: if you license a specialty film to any one of the plaintiffs when Landmark intends to exhibit that film, Landmark can and will use its national circuit power to retaliate against you by refusing to play that film or other films at various, if not all, of the 51 Landmark theaters in 22 major geographic markets throughout the country."). Despite Landmark's arguments to the contrary, plaintiffs allege that distributors must agree to Landmark's clearance demands or risk damaging their relationship with the largest specialty film exhibitor. For example, "distributors have informed plaintiffs that the *only* reason they were refusing to license a particular specialty film was because of clearances demanded by Landmark,

and not because they desired to restrict the number of theaters playing the film." *Id.* ¶ 75 (emphasis added); *see Cobb Theatres*, 101 F. Supp. 3d at 1327 (denying motion to dismiss circuit dealing claim when defendant's conduct "operated as a demand . . . that distributors refuse to license certain films to the [plaintiff] or, alternatively, risk damaging their relationships with one of the nation's largest film exhibitors"). Such anticompetitive conduct may also be inferred by the distributors assent to Landmark's demands. *See id.* (denying motion to dismiss in part because "several major distributors began to honor [defendant's] demand for preferential treatment"). Here, plaintiffs allege that distributors frequently booked specialty film showings with plaintiffs and later cancelled the bookings, often at the last minute, "due to Landmark's clearance demands." Compl., ECF No. 1 ¶ 67, *see also id.* ¶ 66. Landmark's plausibly coercive conduct is also reflected in the favorable clearances and the advantageous terms that Landmark allegedly obtained from distributors across the three markets at issue. *See id.* ¶ 29 ("[D]istributors have denied access to virtually every specialty film for which Landmark has demanded a clearance . . . ."); *see also id.* ¶¶ 63-72.

Landmark contends that plaintiffs do not allege facts to suggest that Landmark actually threatened distributors. Defs.' Reply, ECF No. 18 at 12. But plaintiffs need not specifically

allege *any* threats made by Landmark to state a plausible claim. *See Griffith*, 334 U.S. at 107-08 (finding that an exhibitor "need not be as crass" as to explicitly threaten a distributor "in order to make [its] monopoly power effective in [] competitive situations"). Indeed, reading the complaint in the light most favorable to plaintiffs, the Court may infer that the favorable agreements and reduced market access are plausibly attributed to Landmark's allegedly anticompetitive, coercive conduct. *See* Compl., ECF No. 1 ¶ 75; *see also Cobb Theatres*, 101 F. Supp. 3d at 1343 ("[An exhibitor] is guilty of circuit dealing . . . . even when the exhibitor does not expressly threaten distributors that it will withhold business of its closed or monopoly markets unless it is given preferential treatment"). That said, plaintiffs indeed allege that Landmark dropped a film at a Landmark theater as retribution against a distributor that failed to prevent plaintiff Avalon from showing the film at the same time. Compl., ECF No. 1 ¶ 70.

In sum, such alleged conduct may plausibly "eliminate the opportunity for the small competitor to obtain the choice first runs, and put a premium on the size of the circuit." *Paramount*, 334 U.S. at 154; *see Griffith*, 334 U.S. at 108 (holding that defendants may not use monopoly "to stifle competition by denying competitors less favorably situated access to the market"); *see also Cobb Theatres*, 101 F. Supp. 3d at 1343

(finding that plaintiffs stated a "monopoly leveraging" circuit dealing claim because the complaint "accuses AMC of using or attempting to use its circuit power and its monopoly power in a substantial number of non-competitive [closed] zones to drive high-quality theatres out of markets in which they compete with AMC," even though the complaint did not identify coercive threats, specific agreements, or specific closed markets).

Plaintiffs also allege that Landmark plausibly engaged in circuit dealing by negotiating blanket clearance agreements that unlawfully "cover exhibition in two or more theatres in a particular circuit." *Paramount*, 334 U.S. at 154. Such conduct allows "the exhibitor to allocate the film rental paid among theaters as it sees fit." *Id.* In *Cobb Theatres*, the district court denied defendant AMC's motion to dismiss, finding that the plaintiff had alleged an unlawful circuit dealing arrangement in part because AMC "simultaneously negotiated clearances for both of its Buckhead theatres." 101 F. Supp. 3d at 1343. So here too. Plaintiffs allege that Landmark negotiated a clearance for multiple theaters in the Denver market when it moved a film clearance from one theater to another, plausibly preventing plaintiff Sie FilmCenter from competing on a theater-by-theater basis. Compl., ECF No. 1 ¶ 65.

As such, the Court finds that plaintiffs allege sufficient facts to state a plausible circuit dealing claim. The Court is

not persuaded by Landmark's arguments to the contrary, all of which rely on cases resolved with the benefit of discovery. *See* Defs.' Mot., ECF No. 16 at 17-19 (citing *Orbo Theatre Corp. v. Loew's Inc.*, 156 F. Supp. 770 (D.D.C. 1957)(post-trial); *Houser v. Fox Theatres Mgmt. Corp.*, 845 F.2d 1225 (3d Cir. 1988)(motion for summary judgment); *Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, No. 03 Civ. 1895(PAC), 2007 WL 39301 (S.D.N.Y. Jan. 8, 2007)(motion for summary judgment)). Paramount cites *Reading International, Inc. v. Oaktree Capital Management, LLC* as a case in which the circuit dealing claim was dismissed. Defs.' Mot., ECF No. 16 at 18. However, such reliance is inapposite, as the district court did not reach the merits of the plaintiffs' circuit dealing claim. Instead, it dismissed the claim because "plaintiffs raise the allegation of circuit dealing for the first time in their opposition papers." 317 F. Supp. 2d 301, 318 n.9 (S.D.N.Y. 2003).

Indeed, plaintiffs' allegations are not unlike those made by Landmark in its 2016 complaint charging Regal Entertainment Group ("Regal") with anticompetitive conduct and circuit dealing. *See Landmark Theatres v. Regal Entm't Grp.*, Civ. No. 16-123-CRC.[2] In opposing Regal's motion to dismiss, Landmark

---

[2] Landmark's case against Regal was settled before the district court resolved Regal's motion to dismiss. *See* Stipulation, ECF No. 19 (Civ. No. 16-123).

argued that it had adequately alleged a circuit dealing claim because: (1) "it alleges that Regal derives substantial power over distributors from its status as the largest exhibitor circuit in the United States"; (2) it "alleges that Regal demanded" that distributors deny Landmark access to the market and "eliminate the opportunity for the small competitor [Landmark] to obtain the choice first runs"; and (3) this demand "deprive[s] Landmark of the inputs it needs to compete with the threat that Regal could and would disadvantage distributors' films across Regal's circuit." Landmark's Opp'n, ECF No. 17 at 19-20 (Civ. No. 16-123)(citations and quotations omitted). When confronted with a similar argument that Landmark had not alleged specific facts regarding Regal's allegedly coercive demands, Landmark noted that it could not have "possibly" alleged additional facts "[w]ithout the benefit of discovery." *Id.* at 21. So here too.

### 2. Concerted Action

Landmark also argues that plaintiffs do not allege a viable circuit dealing claim because plaintiffs do not allege facts permitting a plausible inference of concerted action or agreement between Landmark and the distributors. Defs.' Mot., ECF No. 16 at 19-22. Instead, Landmark contends that plaintiffs' allegations "at best . . . indicate unilateral decision-making" in that Landmark prefers to not show the same films at the same

time as plaintiffs and that distributors prefer to honor Landmark's preferences. *Id.* at 21-22.

Under Section 1 of the Sherman Antitrust Act, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. Therefore, "[t]o state a claim based on a Section 1 violation, a plaintiff must allege that 'defendants entered into some contract, combination, conspiracy, or other concerted activity that unreasonably restricts trade in the relevant market.'" *WAKA LLC v. DC Kickball*, 517 F. Supp. 2d 245, 250 (D.D.C. 2007)(quoting *Dial A Car, Inc. v. Transp., Inc.*, 884 F. Supp. 584, 591 (D.D.C. 1995)). To that end, "Section 1 does not prohibit unilateral or independent conduct by one organization, no matter how anticompetitive it might be." *Id.* (quotations and citations omitted). To plead concerted action, "antitrust plaintiffs may (and often must) prove conspiracies by 'circumstantial evidence and the reasonable inferences drawn from such evidence,' rather than through direct evidence." *Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, Civ. No. 03-1895, 2007 WL 39301 at *7 (S.D.N.Y. Jan. 8, 2007) (quoting *Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co.,* 998 F.2d 1224, 1230 (3d Cir. 1993)).

Plaintiffs allege "enough factual matter (taken as true) to suggest that an agreement was made." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007). As previously discussed, plaintiffs allege that distributors and Landmark entered into anticompetitive clearance agreements, whereby "Landmark require[s] the distributor to *agree* that it will not license specified specialty films that the distributor would otherwise license to plaintiffs." Compl., ECF No. 1 ¶ 6 (emphasis added); *see also id.* ¶ 30 ("Distributors agree to Landmark's clearance demands because licenses with Landmark are essential to the commercial success of most of the specialty films they distribute."). Moreover, plaintiffs allege that distributors "refus[ed] to license" films to plaintiffs, *id.* ¶ 75, because they could not "break precedent" from their prior agreements with Landmark, *id.* ¶ 65. Plaintiffs place their allegations of Landmark's and the distributors' parallel conduct "in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 557. As such, plaintiffs' allegations sufficiently "raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* at 556.

Landmark argues that the plaintiffs merely allege unilateral action, as both Landmark and the distributors are acting independently for distinct, self-interested reasons. As

such, it contends that its conduct can be explained by market
forces. *See* Defs.' Mot., ECF No. 16 at 21-22. For example,
Landmark argues that it prefers not to show the same films at
the same times as plaintiffs. *See id.* It also argues that
distributors likely prefer to show their films at a national,
profitable exhibitor chain. *See id.* However, in so arguing,
Landmark asks the Court to make a factual determination at this
early stage of proceedings. *See id.* at 21. The Court may not do
so. Indeed, at this stage, the plaintiffs "need not rule out
independent action." *Oxbow Carbon & Minerals LLC v. Union Pac.*
*R.R. Co.*, 81 F. Supp. 3d 1, 13 (D.D.C. 2015). While conspiracy
allegations may fail to state a Section 1 claim if there are
"obvious alternative explanations for the facts alleged," *id.*
(quotations and alterations omitted), "'it is also clear that
allegations contextualizing agreement need not make any unlawful
agreement more likely than independent action . . . at the
motion to dismiss stage,'" *id.* (quoting *Evergreen Partnering*
*Grp., Inc. v. Pactiv Corp.,* 720 F.3d 33, 47 (1st Cir. 2013)).
Without the benefit of discovery, it is not obvious that the
favorable clearance agreements are caused *only* by market forces.

The Court is not persuaded by Landmark's reliance on *Cinema*
*Village Cinemart, Inc. v. Regal Entertainment Group*, an
unreported case from the Southern District of New York, in which
the district court judge granted Regal's motion to dismiss, in

part because the plaintiff failed to allege concerted action. Defs.' Mot., ECF No. 16 at 20-21 (discussing Civ. No. 15-5488, 2016 WL 5719790 (S.D.N.Y. Sept. 29, 2016)). Unlike plaintiffs' complaint here, *none* of the plaintiff's allegations in *Cinema Village Cinemart* suggested an agreement between Regal and the distributors. 2016 WL 5719790 at *3. Whereas the plaintiffs in this case described in detail the various theaters and films affected by Landmark's allegedly unlawful agreements with distributors, the plaintiff in *Cinema Village Cinemart* failed to allege "what theaters or films [the clearances] concerned, or the nature of the supposed threats that induced them." *Id.* at *3. In light of the significant differences between the two cases, the Court cannot rely on the comparison.

### 3. Antitrust Injury

Finally, Landmark argues that the Court must dismiss the plaintiffs' circuit dealing claim because plaintiffs fail to allege an antitrust injury. Defs.' Mot., ECF No. 16 at 22-25. Landmark argues that plaintiffs only allege that their individual theaters have been harmed, while antitrust law requires plaintiffs to allege that Landmark's anticompetitive conduct hurts competition and consumers. *Id.* at 22-23.

It is "clear that a plaintiff claiming federal antitrust violations must plead and prove 'more than injury casually linked to an illegal presence in the market.'" *WAKA*, 517 F.

Supp. 2d at 249 (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489 (1977)). Because the antitrust laws "were enacted for the 'protection of *competition*, not *competitors*," *Brunswick*, 429 U.S. at 488, a plaintiff must allege an anticompetitive impact on the market, *id.* at 488-89. Therefore, to allege an antitrust injury, a plaintiff must plead an "[actual] injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Id.* at 489. "[A]bsent injury to competition, injury to plaintiff as a competitor will not satisfy the pleading requirement." *Mizlou Television Network, Inc. v. Nat'l Broad. Co.,* 603 F. Supp. 677, 684 (D.D.C. 1984).

Throughout the complaint, plaintiffs allege harm to competition and consumers. "[A]ctual anticompetitive effects include, but are not limited to, reduction of output, increase in price, or deterioration in quality." *Cobb Theatres*, 101 F. Supp. 3d at 1335 (quotations and citations omitted). Here, plaintiffs allege just that. The complaint attributes decreased output and revenues for distributors to Landmark's unlawful clearance agreements. *See, e.g.*, Compl., ECF No. 1 ¶¶ 8-9, 73-82. For example, plaintiffs allege that fewer consumers view a film when it is shown in only one location, which leads to decreased distributor revenue. *Id.* ¶ 76. Indeed, distributors allegedly agree that clearance agreements are not necessarily in

22

their economic interest; Landmark's clearance demands were allegedly the "only reason" that distributors refused to license films to plaintiffs. *Id.* ¶¶ 75, 77.

Additionally, plaintiffs allege that consumers have fewer exhibitor choices and endure increased movie prices and decreased theater quality as a result of the unlawful clearance agreements. *See, e.g.*, *id.* ¶¶ 8-9, 73-82. For example, plaintiffs contend that consumers have fewer quality choices in the specialty film exhibitor market; if a consumer seeks to see a film shown by Landmark, the consumer will be unable to enjoy the film at another theater. *Id.* ¶ 78. If a Landmark theater sells out, a consumer may not be able to enjoy the film at all. *See id.* ¶ 79. Moreover, plaintiffs allege that the decreased competition causes higher ticket and concession prices. *Id.* ¶ 79. Finally, as a result of Landmark's alleged anticompetitive conduct, consumers may have to travel further to see a film. *See id.; see also id.* ¶ 65 (alleging that patrons in metropolitan Denver must travel an additional 6.5 miles to see a film at a Landmark theater). As Landmark stated in its opposition to Regal's motion to dismiss, it is "bedrock antitrust law that forcing consumers to travel well outside their market—at considerable inconvenience and expense—to get access to the product they desire *does* harm their welfare." Landmark's Opp'n, ECF No. 17 at 43 (Civ. No. 16-123). In sum, the plaintiffs

sufficiently state an antitrust injury by "point[ing] to the specific damage done to consumers in the market." *Cobb Theatres*, 101 F. Supp. 3d at 1335 (citations and quotations omitted).

Finally, Landmark disputes the accuracy of plaintiffs' allegations, arguing that plaintiffs misunderstand the relevant economic consequences of the clearance agreements. Defs.' Mot., ECF No. 16 at 22-25. For example, Landmark contends that the number of films available to the public *increased* as a result of "interbrand competition." Defs' Mot., ECF No. 16 at 23. In so arguing, however, Landmark again relies on summary judgment cases in asking the Court to make factual determinations regarding *actual* economic effects at the motion to dismiss stage. Again, the Court may not do so.

The Court therefore **DENIES** Landmark's motion to dismiss Count I of the complaint.

## C. Plaintiffs Sufficiently Allege Monopolization

Landmark also argues that plaintiffs fail to state monopolization (Count II) or attempted monopolization (Count III) claims pursuant to Section 2 of the Sherman Act. Defs.' Mot., ECF No. 16 at 25-28. Landmark argues that plaintiffs do not allege two necessary elements of a Section 2 claim: (1) leveraging conduct; and (2) monopoly power. *Id.*

"[T]he use of monopoly power, however lawfully acquired, to foreclose competition, to gain a competitive advantage, or to

destroy a competitor, is unlawful." *Griffith,* 334 U.S. at 107.

"To plead a claim for actual monopolization, a plaintiff must allege: '(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident.'" *WAKA LLC*, 517 F. Supp. 2d at 250 (quoting *City of Moundridge v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 41 (D.D.C. 2007) and citing *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)). "To state a claim for attempted monopolization, a plaintiff must provide facts showing: '(1) a specific intent to destroy competition or control competition in the relevant market, and (2) a dangerous probability of success in actually monopolizing the relevant market.'" *Id.* at 252 (quoting *Dial A Car, Inc.*, 884 F. Supp. at 589-90). "The key inquiry involves the power of the defendant in the market in which it competes." *Id.* (citations and quotations omitted).

## 1. Leveraging Conduct

Landmark argues that plaintiffs do not state that Landmark leveraged any monopoly power because the complaint does not allege that it combined its open and closed towns when negotiating with distributors. Defs.' Mot., ECF No. 16 at 26-27. "When the buying power of the entire circuit is used to negotiate films for [an exhibitor's] competitive as well as

[its] closed [or non-competitive] towns, [the exhibitor] is using monopoly power to expand [its] empire." *Griffith,* 334 U.S. at 108. The consequence of this conduct is "that films are licensed on a non-competitive basis in what would otherwise be competitive situations." *Id.*

Plaintiffs' Section 2 claims rely on the same allegations of anticompetitive behavior as their Section 1 claim. *Compare* Compl., ECF No. 1 ¶¶ 83-90 *with id.* ¶¶ 92-104. To that end, Landmark essentially repeats its argument that plaintiffs do not allege that Landmark leverages its monopoly power in non-competitive markets to negotiate favorable clearance agreements in competitive markets. Defs.' Mot., ECF No. 16 at 26-27. As thoroughly discussed, however, *supra* Sec. B.1, the Court finds that plaintiffs allege sufficient facts to infer that Landmark engaged in monopoly leveraging conduct. Indeed, at this stage of the proceedings, the Court cannot agree with Landmark that "there are no allegations that Landmark took advantage of its position in closed geographic markets to strengthen its hand in negotiations with distributors." *Id.* at 27. As discussed, plaintiffs allege that Landmark is the dominant specialty film exhibitor and that it wields its considerable market power to obtain favorable clearance agreements in competitive markets nationwide. *See, e.g.*, Compl., ECF No. 1 ¶¶ 18, 70-72, 75.

Nevertheless, Landmark argues that plaintiffs' Section 2 claims must fail because the complaint "does not identify Landmark's closed [or non-competitive] towns, if any" and because plaintiffs "say nothing about the competitive makeup of the other 15 markets where Landmark exhibits specialty films." Defs.' Mot., ECF No. 16 at 27. However, plaintiffs are not required to plead such specific facts at this early stage of the litigation. In *Cobb Theatres*, the district court denied the defendant's motion to dismiss even though the plaintiffs had not specifically identified non-competitive markets. 101 F. Supp. 3d at 1343. "Identifying specific closed markets used for leveraging" was "unnecessary" because plaintiffs alleged that the defendant exhibitor was "using the power of its *entire* nationwide circuit . . . to acquire exclusive privileges in markets where it had competitors." *Id.* So here too. Not only do plaintiffs allege that Landmark "leveraged its dominant position nationwide" by coercing distributors to enter into favorable clearance agreements, *see, e.g.*, Compl., ECF No. 1 ¶ 30, but plaintiffs also allege that distributors agree that Landmark's demands are the "only reason" distributors enter into such agreements, *id.* ¶ 75.[3]

---

[3] Moreover, the Court is not persuaded by Landmark's misplaced reliance on *Six West Retail Acquisition, Inc. v. Sony Theatre Management Corp. See* Defs.' Mot., ECF No. 16 at 27 (citing Civ. No. 97-5499, 2004 WL 691680 at *11 (S.D.N.Y. Mar. 31, 2004)).

### 2. Monopoly Power

Finally, Landmark argues that plaintiffs' Section 2 claims must fail because the complaint does not adequately allege that Landmark possessed, or had a dangerous possibility of possessing, monopoly power. Defs.' Mot., ECF No. 16 at 27–28. Monopoly power is the "existence of power to exclude competition when it is desired to do so." *Griffith*, 334 U.S. at 107 (quotations and citations omitted). It "may be inferred from a firm's possession of a dominant share of a relevant market that is protected by entry barriers." *United States v. Microsoft Corp.*, 253 F.3d 34, 51 (D.C. Cir. 2001)(citations omitted).

The Court disagrees that plaintiffs do not allege facts regarding Landmark's monopoly power. As the Court has discussed, plaintiffs allege that Landmark is the largest specialty film exhibitor in the nation. *See* Compl., ECF No. 1 ¶ 18. Landmark does not dispute that allegation; it agrees that it has fifty-one theaters in twenty-two major geographic markets nationwide. *See* Defs.' Mot., ECF No. 16 at 10; *see also* Compl., ECF No. 1 ¶ 71. Moreover, plaintiffs describe several markets in which Landmark occupies the majority of the specialty film exhibitor

---

Landmark states that the plaintiff's attempted monopolization claim in that case was "dismiss[ed]," *id.*, but *Six West* was actually resolved "after years of discovery," 2004 WL 691680 at *3–4, 7.

market. *See* Compl., ECF No. 1 ¶¶ 44-62. Such allegations are sufficient at this early stage of the proceedings. For example, in *Cobb Theatres*, the district court denied the defendant's motion to dismiss in part because the plaintiff alleged that the defendant had "69% share of [the] market," an amount sufficient to infer monopoly power. 101 F. Supp. 3d at 1340 ("in some circumstances, 'over two-thirds of the market is a monopoly'")(quoting *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 480 (1992)). In this case, plaintiffs allege several markets in which Landmark has close to 69% of the market, if not more. *See* Compl., ECF No. 1 ¶¶ 44-62 (discussing St. Louis (80%), Houston (60%), Philadelphia (54%), Detroit (60%), Denver (73%), and the District of Columbia (68%)).

Not only do plaintiffs allege that Landmark possesses a "dominant share" of the national market, but plaintiffs also allege that high entry barriers protect Landmark's monopoly and prevent access the market. *See Microsoft*, 253 F.3d at 51; *see also Cobb Theatres*, 101 F. Supp. 3d at 1340 (noting that "high entry barriers to the market make it reasonable to presume [the defendant] has monopoly power"). Here, plaintiffs allege that high entry barriers, such as limited urban real estate and difficulty in obtaining financing, reinforce and protect Landmark's monopoly. Compl, ECF No. 1 ¶ 36.

The Court therefore **DENIES** Landmark's motion to dismiss Counts II and III of the complaint.

### D. Plaintiffs Sufficiently Allege Tortious Interference

Both parties agree that plaintiffs' tortious interference claim "rises and falls" with plaintiffs' Sherman Act claims. Defs.' Mot., ECF No. 16 at 28 (one paragraph argument relying on its previous arguments); *see* Pls.' Opp'n, ECF No. 17 at 36-37 ("Landmark's only argument for dismissing plaintiffs' tortious interference claim is derivative of its earlier arguments").

Because the Court concludes that plaintiffs state claims under the Sherman Act, the Court **DENIES** Landmark's motion to dismiss Count IV of the complaint.

### V. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Landmark's motion to dismiss. The Court **GRANTS** Landmark's motion to dismiss, in so far as defendant 2929 Entertainment, LP is dismissed from the action without prejudice. The Court **DENIES** Landmark's motion to dismiss Counts I, II, III, and IV of the plaintiffs' complaint. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:**     **Emmet G. Sullivan**
             **United States District Judge**
             **September 28, 2018**