**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| 2301 M CINEMA LLC D/B/A/ WEST END CINEMA, et al.<br><br>                     Plaintiffs,<br><br>          v.<br><br>SILVER CINEMAS ACQUISITION CO. D/B/A LANDMARK THEATRES,<br><br>                     Defendant. | Civil Action No. 1:17-cv-1990-EGS |

**LANDMARK'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

Defendant Landmark opposes Plaintiffs' Motion to Compel Landmark Theatres to Produce Certain Documents ("Motion"), which is premature, mischaracterizes the parties' discussions, and was strategically filed in contravention of Plaintiffs' duty to confer in good faith.  The timeline of events is telling.  On March 8, 2019, Plaintiffs surprised Landmark at the end of a meet-and-confer telephone conference call by saying they intended to call the Court's Deputy Clerk immediately after the call to discuss the process for filing a motion to compel.  Declaration of Thomas L. Boeder ("Decl.") ¶ 3.  Landmark urged that a motion would be premature—Plaintiffs had sent a detailed letter less than 24 hours earlier that Landmark had not had the chance to review—but Plaintiffs insisted on involving the Court.  *Id.*  As of March 8, Plaintiffs (1) had not identified the issues to be addressed in their Motion (and did not do so until March 15), (2) had not provided a list of custodians or search terms (and did not do so until March 18, after the Court issued its order on briefing),[1] and (3) had not produced a single document, aside from organization charts (and did not do so until March 21, four hours before the parties' motion to compel papers were due).[2]  Decl. ¶ 4.  In short, Plaintiffs cannot represent in good faith that Landmark "has slowed this litigation" and "refus[ed] to participate meaningfully in the discovery process."  Mot. at 1.  To the contrary, Plaintiffs' ambush-by-motion strategy is an abuse of the meet-and-confer process that ironically has derailed Landmark's own efforts to review and produce documents as well as the meet-and-confer discussions, the last of which occurred on March 8.

Compounding this gamesmanship, Plaintiffs' Motion is replete with inaccuracies and mischaracterizations, and asserts positions never expressed during the parties' meet-and-confer sessions.  As to the other disputes, Landmark objects on relevance and proportionality grounds.  Landmark disputes Plaintiffs' purported entitlement to a sweeping array of documents and data,

---

[1] Landmark provided its list of document custodians on January 17, 2019.  Decl. ¶ 5.

[2] Given this timeline, Plaintiffs' representations that Landmark has "yet to propose a search methodology" and "has provided no estimate as to when it might begin producing documents, while Plaintiffs have already begun their own document productions" is, at best, very misleading.  Mot. at 1.

regardless of burden or sensitivity and without justifying the relevance of the information, simply because they are "routine requests in antitrust litigation."[3]  Mot. at 1.

I.  **PLAINTIFFS HAVE NOT CONFERRED ABOUT RFPS 7-8 AND 40 AS REQUIRED UNDER THE FEDERAL RULES, AND THEIR MOTION ON THESE ISSUES IS THUS PREMATURE.**

**RFPs 7-8.**  Plaintiffs bypassed the meet-and-confer process on this issue.  Plaintiffs first identified the geographic scope of RFPs 7-8 as an area of impasse on March 7, less than a day before contacting the Court.  Decl. ¶ 7.  Plaintiffs made no attempt to confer with Landmark before bringing this issue to the Court's attention.  *Id.*  Regardless, it is inaccurate that Landmark has "refus[ed] to produce documents concerning its clearance practices beyond Washington, DC, Detroit, and Denver."  Mot. at 2.  Landmark has represented since early January that it will produce documents concerning Landmark's circuit-wide clearance policies or practices (RFP 7), if any, and Plaintiffs have never articulated what, beyond that, they are seeking.  Decl. ¶ 8.  Plaintiffs have emphasized that RFPs 7-8 "concern Landmark's (and distributors') practices, policies, and communications *across* markets," so cannot now claim in good faith that they requested documents concerning clearance practices limited to specific markets outside Washington DC, Denver, or Detroit.  *Id.*  As to distributor policies (RFP 8), Plaintiffs' Motion says nothing.  *See* Mot. at 2.  This issue is not ripe for a decision by the Court.

**RFP 40.**  Plaintiffs have never requested a complete organization chart "listing all of Landmark's head-office employees."  Mot. at 3.  On February 4, Plaintiffs ambiguously demanded a "complete organizational chart."  Decl., Ex. I at 3.  On March 7, Plaintiffs referenced "a complete organization chart (or other vehicle for comprehensive front-office personnel information)," but never responded when Landmark explained it could "not understand the meaning of this phrase."  *Id.*, Ex. G at 3, Ex. A at 6, ¶ 9.  Plaintiffs' Motion now requests for the first time a "listing of all of Landmark's head-office employees (but not theater

---

[3] To support their claim that their requests are "routine," Plaintiffs vaguely reference "Landmark's similar requests to Plaintiffs."  Mot. at 1.  Plaintiffs ignore that Landmark's document requests seek primarily information about film licensing and documents supporting the allegations in the complaint, and request no transaction-level financial or concessions data.  Decl., Ex. F.  As to ticket sales, Landmark requested only "documents sufficient to show the average ticket price for Your theater(s) for each year it has been in operation" (RFP 37).  *Id.*, Ex. F at 12.

staff without responsibility for film-licensing)." Mot. at 3. Landmark does not understand this request either, but to the extent it covers the Head of Human Relations, it is clearly outside the scope of Plaintiffs' own RFP 40, which seeks identification of individuals with "any role in the allegations as set forth in the complaint and/or the licensing, purchasing, exhibition, marketing, advertising, or pricing of specialty films." Decl., Ex. J at 25. Regardless, Landmark produced an organization chart on January 18, 2019, that identifies Landmark's team of film buyers, Chief Executive Officer, and heads of marketing and finance since 2010. *Id.*, Ex. K.

II.   **PLAINTIFFS' REQUESTS FOR REAL ESTATE/DEVELOPMENT INFORMATION AND TRANSACTIONAL-LEVEL DATA ON FINANCES, CONCESSIONS, AND TICKETS SALES ARE NOT DISCOVERABLE.**

**RFPs 26 & 39.** Landmark has objected to these RFPs as overbroad, unduly burdensome, disproportionate, and seeking irrelevant information. *Id.*, Ex. J at 19, 25. Information about real estate and development is unrelated to Plaintiffs' complaint, which alleges that Landmark "stifl[ed] competition" by coercing film distributors. Mot. at 2. Plaintiffs' lawsuit is about film licensing, not real estate; the complaint alleges no misconduct whatsoever concerning development. *See* Dkt. No. 1. Plaintiffs are not entitled to discovery of such highly sensitive documents without even an attenuated connection to their claims. *See United States v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22, 37 (D.D.C. 2012) ("[Courts] should not endorse 'fishing expeditions,' discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests [but rather] tailor discovery 'to the issues involved in the particular case.'" (citations omitted)).

**RFPs 41-42.** RFP 41—which is over a page long and seeks 16 categories of information for each individual ticket and concessions transaction at Landmark's theaters in three markets since 2010—is a textbook example of a disproportionate document request. Decl., Ex. J at 25-27; Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and *proportional to the needs of the case*[.]" (emphasis added)). Despite Plaintiffs' misrepresentations, the burdens involved in making such a production, if even possible, would be overwhelming and hugely expensive. Decl. ¶ 12. Pre-

2014 data "is inaccessible because data production would require the assistance of a third party" *that went out of business and no longer exists.  Id.*; Mot. at 4.  As to data stored since 2014, (1) there are roughly 21 million ticket sales and 11 million concessions sales in the three markets, and (2) it would take Landmark's single capable systems employee about three weeks working full time just to write the computer program to create the reports (and thus require hiring a new employee).  Decl. ¶ 12.  Moreover, Plaintiffs do not need Landmark's concessions data to calculate how much more they would have earned in concessions **at *their own* theaters**, nor do they need detailed transactional data to show relative prices.[4]  Mot. at 3.  Lastly, Plaintiffs' Motion lists RFP 42 but does not explain why it is an issue.  *See id.* at 3-4.

**RFP 45.**  Plaintiffs are similarly mistaken that they are "entitled" to Landmark's audited financial reports, Mot. at 4, which are non-public and include detailed, highly sensitive information with no relevance to the complaint, Decl. ¶ 13.  Plaintiffs have refused to provide any information regarding their damages theory (not even a preliminary estimate), or to explain, in meet and confers or their Motion, why Landmark's detailed financial statements are relevant. *Id.*; Mot. at 4.  Nor do the allegations in the complaint or relief sought justify "a fishing expedition [into Landmark's financial information], requiring [Landmark] to produce vast amounts of potentially sensitive information with little chance of obtaining relevant, admissible evidence."  *Kellogg*, 284 F.R.D. at 37.  The complaint does not seek restitution and Plaintiffs have provided nothing beyond the speculative and conclusory statement that Landmark's detailed finances—which span across unrelated theaters and markets—would "assist in estimating damages."  Mot. at 4.

### III.   CONCLUSION

For the foregoing reasons, Landmark respectfully requests that Plaintiffs' Motion to Compel be DENIED.

---

[4] As to ticket sales, the aggregated ticket sales data available through the third-party comScore/Rentrak database is sufficient.  The parties' ongoing discussions regarding access to comScore/Rentrak were disrupted by the briefing schedule forced by Plaintiffs.  Separately, Plaintiffs' Motion refers to "promotional expenditures," Mot. at 3, which are not covered by either RFP 41 or 42, Decl., Ex. J at 25-27.

DATED: March 25, 2019

                                    Respectfully submitted,

                                    **PERKINS COIE LLP**

                                  By:/s/ Thomas L. Boeder
                                        Thomas L. Boeder, Pro Hac Vice
                                        TBoeder@perkinscoie.com
                                        Alison Caditz, Pro Hac Vice
                                        ACaditz@perkinscoie.com
                                        1201 Third Avenue, Suite 4900
                                        Seattle, WA 98101-3099
                                        Tel: 206-359-8000
                                        Fax: 206-359-9000

                                  By: /s/ Barry J. Reingold
                                        Barry J. Reingold, Bar No. 942086
                                        BReingold@perkinscoie.com
                                        700 Thirteenth Street NW, Suite 600
                                        Washington, D.C. 20005-3960
                                        Tel: 202-654-6200
                                        Fax: 202-654-6211

                                *Attorneys for Defendants Silver Cinemas*
                                *Acquisition Co. D/B/A Landmark Theatres*

# CERTIFICATE OF SERVICE

I certify that on March 25, 2019, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

| | |
|---|---|
| Michael David Hausfeld<br>Sathya S. Gosselin<br>Sarah R. LaFreniere<br>Hausfeld LLP<br>1700 K. Street, NW<br>Suite 650<br>Washington DC, 20006<br><br>*Attorneys for Plaintiffs 2301 M. Cinema LLC D/B/A West End Cinema, Avalon Theatre Project, Inc., Denver Film Society* | ___ Via hand delivery<br>___ Via U.S. Mail, 1st Class, Postage<br>    Prepaid<br>___ Via Overnight Delivery<br>___ Via Facsimile<br>_X_ Via CM/ECF Email<br>___ Other: _____ |
| Irving Scher<br>Hausfeld LLP<br>33 Whitehall Street,<br>14th Floor,<br>New York, NY 10004<br><br>*Attorneys for Plaintiffs 2301 M. Cinema LLC D/B/A West End Cinema, Avalon Theatre Project, Inc., Denver Film Society* | ___ Via hand delivery<br>___ Via U.S. Mail, 1st Class, Postage<br>    Prepaid<br>___ Via Overnight Delivery<br>___ Via Facsimile<br>_X_ Via CM/ECF Email<br>___ Other: _____ |
| Kathryn A. Reilly<br>Natalie West<br>Wheeler Trigg O'Donnell LLP<br>370 17th St., Suite 4500,<br>Denver, CO 80202<br><br>*Attorneys for Plaintiffs Denver Film Society* | ___ Via hand delivery<br>___ Via U.S. Mail, 1st Class, Postage<br>    Prepaid<br>___ Via Overnight Delivery<br>___ Via Facsimile<br>_X_ Via CM/ECF Email<br>___ Other: _____ |

Date:  March 25, 2019

/s/ Barry J. Reingold
Barry J. Reingold
*Attorneys for Defendant Silver Cinemas Acquisition Co. D/B/A Landmark Theatres*