# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| 2301 M CINEMA LLC D/B/A WEST END CINEMA, et al.<br><br>Plaintiffs,<br><br>v.<br><br>SILVER CINEMAS ACQUISITION CO. D/B/A LANDMARK THEATRES, et al.<br><br>Defendants. | Civil Action No. 1:17-cv-1990 (EGS) |

**PLAINTIFFS' OPPOSITION TO LANDMARK'S
MOTION TO COMPEL**

Plaintiffs can only surmise that Landmark chose to file its motion as an attempted counterweight to Plaintiffs' motion.[1] Landmark's motion is unwarranted in any event. First, Landmark's request for a preliminary damages calculation is premature. Damages estimates in antitrust cases require examination and analysis of transactional data, frequently assisted by expert witnesses—as reflected in the parties' stipulated discovery schedule here, which lays out a timeline for this process (once Landmark provides its data, which it has refused to do thus far). Months ago, Plaintiffs asked Landmark's counsel whether they had ever provided a preliminary-damages estimate at this early juncture when representing a plaintiff in antitrust litigation. Landmark's counsel never responded, consistent with Landmark's inability to provide any antitrust authorities here to support the notion that an antitrust plaintiff must provide a speculative estimate of damages this early in the case and in advance of expert discovery.

As for Landmark's request for documents that support Plaintiffs' allegations, Plaintiffs have already begun providing precisely that information by identifying specific distributors in their interrogatory responses, and by producing documents that substantiate their allegations and identify specific distributor personnel.

**"Computation of Damages" in Antitrust Cases**. In insisting upon a damages estimate now, Landmark relies heavily on distinguishable cases concerning breach of contract, false arrest, a commercial dispute, and a patent dispute; in each, the information needed to estimate damages was available to the plaintiff at the time of its initial disclosures or interrogatory responses. *See* Mot. at 3-4. Not so here. The data and information needed to perform Landmark's

---

[1] Plaintiffs were surprised to receive Landmark's motion, not least because Landmark never sought leave of the Court or otherwise indicated, in three joint communications to the Courtroom Deputy Clerk about Plaintiffs' motion to compel, that it intended to raise these or any issues in a motion.

1

requested damages analysis is largely within Landmark's possession, custody, or control (and sought via Plaintiffs' motion), and Landmark has refused to provide *any* of that data or financial information.

As the Federal Rules make clear, "a party would not be expected to provide a calculation of damages which . . . depends on information in the possession of another party or person." Fed. R. Civ. P. 26, Advisory Committee Note, 1993 Amendments. *Hyland v. Home Services of America,* illustrates this principle in the antitrust context. No. 3:05CV-612-R, 2008 WL 11357996 (W.D. Ky. Mar. 26, 2008).[2] In *Hyland*, much like here, antitrust defendants demanded a precise damages calculation in advance of contemplated expert discovery. *Id.* The Court denied their motion to compel, explaining that initial disclosures are "limited by the quantity and quality of information available to the party"; an antitrust plaintiff that provides "his general theory of damages" (but for the anticompetitive conduct alleged), subject to actual estimates as "additional material information becomes available," "satisf[ies] the spirit of the Rule . . . [and] is in keeping with the various traditional methods of proving the existence and measure of damages . . . in an antitrust action." *Id.* at *4. Here, Plaintiffs have already told Landmark they intend to pursue a lost-profits damages analysis, reflecting, *inter alia*, the difference in ticket and concession sales had Landmark not prevented Plaintiffs from exhibiting virtually every specialty film Landmark desired, and that the collective damages estimate is likely to be in the millions of dollars (and to be coupled with the value of the injunctive relief sought)—but cannot be calculated without data and expert analysis. And damages continue to accrue as Landmark is still obtaining clearances for new films.

Landmark's lone antitrust citation, *Gumwood HP Shopping Partners, L.P. v. Simon*

---

[2] All citations are emphasis added and citations omitted.

*Property Group, Inc.*, No. 3:11-CV-268 JD, 2017 WL 3016385 (N.D. Ind. July 17, 2017), actually supports Plaintiffs' position. *Gumwood* concerned a situation in which a party disclosed its damages estimate for the first time on the eve of trial, eighteen months after the close of discovery. *Id*. at *3. *Gumwood* counsels that parties "may be unable to provide a precise computation of their damages at the outset of discovery," thus "the opportunity to develop and refine their theories through discovery." *Id*. at *2. And *Gumwood* further recognized that an estimate of damages as "the difference between the appraised value of [a property] and its sale value" was acceptable for purposes of initial disclosures, if not trial. *Id*. at *3 n.1.

**Interrogatories 6 and 7**. Ironically, Landmark demands the identification of every distributor and individual that ***Landmark*** unlawfully coerced into granting exclusive licenses that deny Plaintiffs access to specialty films—and detailed descriptions, related documents, and an accounting of all of ***Landmark's*** anticompetitive conduct. If Landmark truly seeks only documents and information in Plaintiffs' possession, custody, or control at the time of their complaint, ***Landmark is already receiving it*** in the form of document production responsive to nearly hundreds of document requests that specifically concern Plaintiffs' allegations (tantamount to Fed. R. Civ. P. 33(d)), and which identify distributor personnel.[3] Plaintiffs already identified the 37 distributors that likely have relevant information. Landmark, of course, knows well from which distributors and personnel it demanded anticompetitive clearances,[4] and

---

[3] *See* Ex. A (Landmark's RFPs). Plaintiffs have been forthright about the distributors described in the complaint; as Landmark knows well, those names are: Compl. ¶ 65: *Moonlight* – A24; Compl. ¶ 66: *My Cousin Rachel* – Fox Searchlight Pictures; Compl. ¶ 67: *Hell or High Water* – Lionsgate; *Birdman* – Fox Searchlight Pictures; *Spotlight* – Open Road Films; *Room* – A24; Compl. ¶ 68: *The Illusionist* and *The Lunchbox* – Sony Pictures Classics; *Anita* – Samuel Goldwyn Films; Compl. ¶ 69: *Love and Friendship* – Roadside Attractions; *An Inconvenient Sequel* – Paramount Pictures; *The Beguiled* – Focus Features; Compl. ¶ 70: *Their Finest* – STX.
[4] Significantly, Landmark did not identify a single distributor employee in its initial disclosures despite its suggestion now that doing so is mandatory. *See* Ex. B.

Plaintiffs still await production of those communications.

Landmark frames its requests as simply inquiring about "the identification of documents and witnesses," Mot. at 3, but it actually seeks to oblige Plaintiffs to "separately articulate the underlying facts upon which they [will ultimately] base their" claims, which are premature contention interrogatories served at the beginning of discovery. *See English v. Wash. Metro. Area Transit Auth.,* 323 F. R.D. 1, 19 (D.D.C. 2017) ("the obligation to respond is often deferred until near the end of the discovery period").[5] Landmark would require Plaintiffs to furnish all the information and documentary evidence that supports their claims, **on an ongoing basis**, over a year before summary judgment and before Landmark has even proposed a search methodology (let alone begun producing its documents). The Federal Rules impose no such requirement. Nor can Landmark misconstrue Plaintiffs' circuit-dealing claims as advancing a series of discrete and segregable unlawful "instances." *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962). At bottom, Landmark's interrogatories raise the concern that Judge Kay warned of in *Saint-Jean v. District of Columbia*: "If a contention interrogatory tracked each allegation in an opposing party's pleadings, and requested 'each and every fact' and application of law to fact that the opposing party planned to use in support of its claims, then the court would quash such an interrogatory." No. 08-CV-1769, 2014 WL 12792681, at *5–6 (D.D.C. Sept. 8, 2014).[6]

---

[5] Courts permit contention interrogatories only at or near the close of discovery. *See, e.g., In re Domestic Airline Travel Antitrust Litg.,* Misc. No. 15-1404, 2018 WL 4381070 at *3 (D.D.C. June 15, 2018); *In re Rail Freight Fuel Surcharge Antitrust Litg.,* 281 F.R.D. 1, 3 (D.D.C. 2011).

[6] The cases Landmark cites are again distinguishable. *See Guantanamera Cigar Co. v. Corporacion Habanos*, S.A., 263 F.R.D. 1, 4 (D.D.C. 2009) (ordering disclosure where plaintiff's initial disclosures contained "thousands of possible persons or companies"); *Klayman v. Barmak* No. 08-1005-JDB, 2009 WL 10695670, at *1 (D.D.C. Oct. 28, 2009) (ordering disclosure where plaintiff failed to respond to a motion to compel, and later neglected to identify specific individuals or the subjects of information). Finally, *Everett v. USAir Group, Inc*. actually supports Plaintiffs' position that responses to "[contention interrogatories are] **often postponed until near the end of the discovery period** . . ." 165 F.R.D. 1, 3 (D.D.C. 1995).

Dated March 25, 2019

Respectfully submitted,

By: */s/ Sathya S. Gosselin*
Sathya S. Gosselin (D.C. Bar No. 989710)
Michael D. Hausfeld (D.C. Bar No. 153742)
Paul T. Gallagher (D.C. Bar No. 439701)
Sarah LaFreniere (D.C. Bar No. 1034183)
1700 K Street, NW
Suite 650
Washington, DC 20006
Phone: (202) 540-7200
sgosselin@hausfeld.com
mhausfeld@hausfeld.com
pgallagher@hausfeld.com
slafreniere@hausfeld.com

Irving Scher (admitted *pro hac vice*)
33 Whitehall Street
14th Floor
New York, NY 10004
Phone: (646) 357-1100
ischer@hausfeld.com

*Attorneys for Plaintiffs 2301 M Cinema LLC D/B/A West End Cinema, Avalon Theatre Project, Inc., Denver Film Society, Cinema Detroit*

Kathryn A. Reilly (admitted *pro hac vice*)
Natalie West (admitted *pro hac vice*)
Wheeler Trigg O'Donnell LLP
370 17th St., Suite 4500
Denver, CO 80202
Phone: (303) 244-1800
reilly@wtotrial.com
west@wtotrial.com

*Attorneys for Plaintiff Denver Film Society*

## **CERTIFICATE OF SERVICE**

I certify that on March 25, 2019, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

                By:    */s/ Sathya Gosselin*
                         Sathya Gosselin