# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| 2301 M CINEMA LLC D/B/A/ WEST END CINEMA, et al.<br><br>      Plaintiffs,<br><br> v.<br><br>SILVER CINEMAS ACQUISITION CORP. D/B/A LANDMARK THEATRES,<br><br>      Defendant. | Civil Action No. 1:17-cv-1990 (EGS) (RMM) |

**DEFENDANT LANDMARK THEATRES' MOTION FOR PROTECTIVE ORDER**

Defendant Silver Cinemas Acquisition Co. d/b/a Landmark Theatres ("Landmark") requests a protective order to modify Plaintiffs' Rule 30(b)(6) notice of deposition ("Notice").

## BACKGROUND

Plaintiffs previously moved to compel discovery on a slew of topics. *See* Dkt. Nos. 37, 44. Their first motion sought, as relevant here: (1) information specific to non-relevant markets; (2) information about real estate and development; (3) transactional operations data; and (4) expansive financial data. Dkt. No. 37. Plaintiffs' second motion to compel—filed without leave of the Court—relitigated the question of geographic scope for 20 pages, and briefly argued they are also entitled to discovery about wide-release commercial film. Dkt. No. 44. Landmark opposed both motions, which are pending before the Court. Dkt. Nos. 39, 47.

On September 10, 2019, Plaintiffs served a 30(b)(6) Notice of Deposition. Landmark served its responses and objections, agreeing to present a witness on 8 of the 13 topics, even though nearly all of them implicate at least one pending issue identified above. *See* Ex. A.

## ARGUMENT

This Court "**must limit** the extent of discovery if . . . outside the permitted scope of Rule 26(b)(1)," which only allows discovery into "any nonprivileged matter that is relevant to any party's claim or defense and **proportional to the needs of the case**." *Buie v. Dist. of Columbia*, 327 F.R.D. 1, 6-7 (D.D.C. 2018) (Meriweather, J.) (emphasis added) (quoting Fed. R. Civ. P. 26(b)(1)). Courts may "for good cause, issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense" by "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]" Fed. R. Civ. P. 26(c)(1), (D). But the Rule 26(c)(1) good cause showing—based on specific facts showing a defined and serious injury—is unnecessary where Rule 26(b) is the basis for the protective order, *e.g.,* disproportionality. *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 22 (E.D. Mich. 2019).

LEGAL145811383.3

Landmark requests a protective order barring Plaintiffs from seeking testimony about the categories of information sought in Plaintiffs' motions to compel and irrelevant information concerning the acquisition of Landmark, and narrowing the scope of Topic 6.

**I.      Discovery, including 30(b)(6) testimony, should exclude the pending disputed topics.**

*Geographic scope.* Expanding their initial demand, Plaintiffs now seek not only nationwide discovery about clearances, but additional detailed information about 24 *non-relevant markets*. *See* Compl. ¶ 34 ("The relevant geographic markets are [D.C., Denver, and Detroit."). The Notice would apparently require Landmark to identify, since 2010, its competitors in *all 27 markets* (including the 24 non-relevant ones), "the extent of each geographic market," the "[f]requency of contact" with distributors and "[d]ollar volume of business" in 27 markets, and specific decisions to cancel individual (unnamed) films in 27 markets.[1] Ex. A, at 8-9.

As detailed in previous motions, nationwide scope would be disproportionate to the needs of *this case* (except discovery concerning circuit-wide film licensing practices and policies, which Landmark has never opposed). Dkt. Nos. 39, 47; *see* Fed. R. Civ. P. 26(b)(1). Discovery limited to the three relevant markets has been costly, and yet Plaintiffs refuse (still) to provide an initial estimate of their damages.[2] *See* Dkt. No. 38 (pending motion to compel damages estimate). This Court thus cannot "compare the cost of discovery to the amount in controversy to determine the proposed discovery's proportionality." *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 7 (D.D.C. 2017). It would be unfair to allow Plaintiffs to pursue

---

[1] Geographic scope implicates Topics 1, 3(c), 4, 6, 7, 8, and 9. *See* Ex. A.

[2] Although Plaintiffs have refused to amend their initial disclosures as required, they asserted in passing and without any declaration or other support that damages are "likely to be in the millions." Dkt. No. 40. Even assuming this is true (and it is highly unlikely, *see infra*), Landmark's fees since the outset of this case total over $1.2 million, with costs related to document review alone totaling roughly $340,000. Declaration of Thomas L. Boeder, ¶¶ 3-5.

their expansive and expensive discovery campaign when they have made the strategic choice to hide the ball on damages (despite their obligations under the Federal Rules).

Even if this Court does not assume that damages are negligible (which it should), it can presume the amount in controversy is low: three Plaintiffs are not-for-profit "public charities," and their claims concern relatively low-grossing specialty films. *See* Dkt. No. 47, at 5-8. Plaintiffs' Notice—which seeks broad, burdensome, and costly discovery outside the relevant markets—highlights the need to cabin the geographic scope in a case with a relatively tiny amount in controversy before discovery becomes "so expensive as to overtake the value of this litigation" (if that hasn't happened already). *Arrow Enter. Computing Sols., Inc. v. BlueAlly, LLC*, No. 5:15-CV-37-FL, 2017 WL 876266, at *4 (E.D.N.C. Mar. 3, 2017).

**Product market.** Topic 5 seeks testimony on Landmark's "policies and practices with respect to the selection and exhibition of *commercial film*s," another pending issue. Ex. A, at 9 (emphasis added); *see* Dkt. Nos. 44 at 14, 47 at 3. But Plaintiffs' Complaint identifies "[t]he relevant product market [as] the market for exhibiting first-run Specialty Films," and stresses that "moviegoers generally do not regard Specialty Films as adequate substitutes for Commercial Films." *Compare* Compl. ¶¶ 31-32 ("[T]he operation of [specialty film] theaters . . . [is] distinct from the operation of theaters that exhibit commercial movies."), *with Meijer, Inc. v. Warner Chilcott Holdings Co., III, Ltd.*, 245 F.R.D. 26, 30-31 (D.D.C. 2007) (permitting discovery into product where party alleged "interchangeability of products"). Because Plaintiffs concede that specialty film and wide-release commercial film are *not interchangeable*—and given Landmark's proportionality arguments, Dkt. No. 47, at 5-8—discovery should be limited to the only relevant product market identified by Plaintiffs: first-run specialty film. Although Landmark has agreed to testify about general differences between commercial and specialty film, *see* Ex. A, at 8 (Topic 3), detailed testimony about commercial film—including the unrelated lawsuit

between Landmark and Regal, which concerned exclusively wide-release commercial film (Topic 12)—is irrelevant to Plaintiffs' claims and disproportionate the needs of this small case.

*Real estate.* Plaintiffs continue to seek discovery about real estate and development—a highly sensitive topic without even an attenuated link to their claims. Ex. A, at 11-12 (Topics 9(e) and 10). Landmark has agreed to testify about its decision to purchase or lease West End Cinema, formerly owned by a Plaintiff, *see* Ex. A, at 13, but objects to discovery into its "business plans and/or strategic plans for the development of new theaters," *id.* at 12. This topic is irrelevant to Plaintiffs' lawsuit, which concerns film licensing and alleges *no misconduct related to development*. Dkt. No. 39, at 4; *see Buie*, 327 F.R.D. at 11 ("[D]iscovery that is 'too far removed' from allegations in the operative Complaint is [generally] disallowed.").

*Transactional operations data.* Topic 9(f) seeks testimony related to Landmark's and its competitors' concessions. But, as previously argued, Plaintiffs do not need Landmark's concessions data to calculate lost profit in concessions *at their own theaters*. Dkt. No. 39, at 5.

*Financial information.* Plaintiffs broadly seek testimony on Landmark's "financial condition, including, revenues, costs, profits, and any funding by and financial relationship with the Cohen Group." Ex. A, at 8. But Plaintiffs are not entitled to this expansive, non-public, and highly sensitive information with no relevance to the complaint, and their conclusory statement that it would help calculate damages is insufficient. *See* Dkt. No. 39, at 5.

## II. Plaintiffs are not entitled to testimony about the acquisition of Landmark.

Plaintiffs also seek detailed information about the Cohen Group's acquisition of Landmark on the ground that it "is relevant to determining whether Landmark's new owner is an appropriate defendant in this matter."[3] Joint Email to Meriweather Chambers (Sept. 25, 2019).

---

[3] In addition to financial information related to the Cohen Group, *see supra*, Plaintiffs seek testimony about "(a) [Landmark's] relationship with the Cohen Group, and the Cohen Group's

- 4 -

As an initial matter, Plaintiffs should not be allowed to conduct a fishing expedition. Rule 26 precludes Plaintiffs from "explor[ing] matter which does not presently appear germane on the theory that it might conceivably become so." *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union, AFL–CIO–CLC*, 103 F.3d 1007, 1012-13 (D.C. Cir. 1997). But in any event, the Cohen Group is no way involved in film licensing activity at Landmark. Declaration of Ted Mundorff ¶ 1; *see Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 857 & n.12 (10th Cir. 1999) (declining to view parent and subsidiary as a single entity absent "specific evidence of coordinated activity"). And the acquisition was negotiated between the prior and current owners; Landmark was not meaningfully involved. Mundorff Decl. ¶ 2. There is thus no basis for adding the Cohen Group as a defendant, even assuming the testimony were relevant.

### III.    Topic 6 is overly broad and unduly burdensome and should be narrowed.

The parties discussed limiting this Topic to 15 distributors, but even so, subsections (a), (b), (c), and possibly (d) "read[] like an interrogatory or a section of a request for production of documents." *Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 7, 18 (D.D.C. 2004); Ex. A, at 9-10. This topic "alone cover[s] an impermissibly broad range of subjects over a significant number of years, making it difficult . . . for Defendant to designate and prepare a witness . . . that could satisfy the 'duty of being knowledgeable on the subject matter identified as the area of inquiry.'" *Prasad v. George Wash. Univ.*, 323 F.R.D. 88, 98 (D.D.C. 2017) (citation omitted). Landmark requests that the Court narrow this Topic.

### CONCLUSION

Landmark respectfully requests a protective order narrowing Topic 6 and barring Plaintiffs from seeking testimony on the pending issues and testimony regarding the acquisition.

---

purchase of Landmark; [and] (b) Individuals and entities with whom [Landmark] consulted or contracted for analysis related to [the] potential sale." Ex. A, 7-8.

- 5 -

Date:  October 08, 2019

Respectfully submitted,

**PERKINS COIE LLP**

By:/s/ Thomas L. Boeder
Thomas L. Boeder, Pro Hac Vice
TBoeder@perkinscoie.com
Elvira Castillo, Pro Hac Vice
ECastillo@perkinscoie.com
Alison Caditz, Pro Hac Vice
ACaditz@perkinscoie.com
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Tel:  206-359-8000
Fax: 206-359-9000

Barry J. Reingold, Bar No. 942086
BReingold@perkinscoie.com
700 Thirteenth Street NW, Suite 600
Washington, D.C. 20005-3960
Tel: 202-654-6200
Fax: 202-654-6211
Attorneys for Defendants Silver Cinemas
Acquisition Co. D/B/A Landmark Theatres

## RULE 7(m) CERTIFICATION

I certify that counsel for Landmark has met and conferred with counsel for Plaintiffs in a good-faith effort to resolve the issues addressed herein without Court action.

Certified this 8th day of October, 2019

<u>/s/ Thomas L. Boeder</u>

## CERTIFICATE OF SERVICE

I certify that on October 8, 2019, I caused the foregoing document to be served via email, with service via the CM/ECF system to follow as soon as practicable.

| | |
|---|---|
| Michael David Hausfeld: MHausfeld@hausfeld.com<br>Sathya S. Gosselin: SGosselin@hausfeld.com<br>Sarah R. LaFreniere: slafreniere@hausfeld.com<br>Michaela Spero: mspero@hausfeld.com<br>Paul Thomas Gallagher: pgallagher@hausfeld.com<br>Hausfeld LLP<br>1700 K. Street, NW<br>Suite 650<br>Washington DC, 20006<br><br>*Attorneys for Plaintiffs 2301 M. Cinema LLC D/B/A West End Cinema, Avalon Theatre Project, Inc., Denver Film Society* | ___  Via hand delivery<br>___  Via U.S. Mail, 1st Class, Postage Prepaid<br>___  Via Overnight Delivery<br>___  Via Facsimile<br>_X_  Via Email<br>___  Other: _____ |
| Irving Scher: ischer@hausfeld.com<br>Hausfeld LLP<br>33 Whitehall Street,<br>14th Floor,<br>New York, NY 10004<br><br>*Attorneys for Plaintiffs 2301 M. Cinema LLC D/B/A West End Cinema, Avalon Theatre Project, Inc., Denver Film Society* | ___  Via hand delivery<br>___  Via U.S. Mail, 1st Class, Postage Prepaid<br>___  Via Overnight Delivery<br>___  Via Facsimile<br>_X_  Via Email<br>___  Other: _____ |
| Kathryn A. Reilly: reilly@wtotrial.com<br>Natalie West: west@wtotrial.com<br>Wheeler Trigg O'Donnell LLP<br>370 17th St., Suite 4500,<br>Denver, CO 80202<br><br>*Attorneys for Plaintiffs Denver Film Society* | ___  Via hand delivery<br>___  Via U.S. Mail, 1st Class, Postage Prepaid<br>___  Via Overnight Delivery<br>___  Via Facsimile<br>_X_  Via Email<br>___  Other: _____ |

Date:  October 8, 2019

/s/Alison R. Caditz
Alison R. Caditz, Pro Hac Vice
ACaditz@perkinscoie.com

145922846.1